*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *GRANJA PLANALTO,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-142-P-H* |
| | ) | |
| *OHIO CASUALTY INSURANCE* | ) | |
| *COMPANY,* | ) | |
| | ) | |
| *Defendant* | ) | |

**RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MEMORANDUM DECISION ON MOTION TO STRIKE**

The plaintiff, Granja Planalto ("Planalto"), in this reach and apply action that was
removed from the Maine Superior Court (Cumberland County), seeks summary judgment on
certain issues and the dismissal of certain affirmative defenses pled by the defendant. I begin
with the plaintiff's motion for partial summary judgment and recommend that the motion be
granted as to liability and otherwise denied.

### I.   Motion for Partial Summary Judgment

### A.   Summary Judgment Standard

*1. Federal Rule of Civil Procedure 56.*   Summary judgment is appropriate only if the record
shows "that there is no genuine issue as to any material fact and that the moving party is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st
Cir. 2004).  "In this regard, 'material' means that a contested fact has the potential to change the
outcome of the suit under the governing law if the dispute over it is resolved favorably to the
nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a

reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

*2. Local Rule 56.* The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial

or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## B.  Factual Background

The statements of material facts filed by the parties include the following undisputed material facts.

Planalto entered into a written contractual relationship with Avian Farms International, Inc. in 1994 and continued that relationship through August 1999.  Statement of Material Facts in Support of Motion for Partial Summary Judgment ("Plaintiff's SMF") (Docket No.  28) ¶ 2; Defendant Ohio Casualty's Opposing Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 40) ¶ 2.[1]  During this time period, Planalto purchased at various times from Avian Farms International, Inc. and Avian Farms (USA), Inc. certain genetic lines of grandparent poultry stock for eventual meat production *Id.* ¶ 3.  Avian Farms International, Inc. was merged into Avian Farms (USA), Inc. in December 1995.  *Id.* ¶ 4.  On June 28, 2000, Avian Farms, Inc. and Avian Farms (USA), Inc. executed an Assignment for Benefit of Creditors pursuant to which they assigned their property to William A. Brandt, Jr., apparently as a trustee. *Id.* ¶ 5.[2]  Section A(1) of the Assignment for Benefit of Creditors states in part as follows:

> The assignee accepts this assignment for the purpose of liquidating in an orderly fashion the trust property and of distributing the proceeds therefrom to the creditors of the assignor in accordance with the terms of the assignment agreement and applicable law.

*Id.*

In May 2001, Planalto commenced a civil action against Avian Farms International, Inc. in the Maine Superior Court (Kennebec County) that was given the docket number CV-01-84 (the "Avian Farms action").  *Id.* ¶ 6.  A default was entered in this action by the court clerk on

---

[1] Counsel for both parties are reminded that this court's Local Rule 56(f) requires that each assertion of fact set forth in a statement of material facts must be followed by a citation to the specific page or paragraph of identified record material supporting the assertion, not to an entire document.  The same is true of a denial of a particular paragraph set forth in a responsive statement of material facts.  The court may disregard any statement not so supported.  Local Rule 56(c) & (e).

[2] The defendant purports to deny this paragraph of the plaintiff's statement of material facts, but does not state why it denies the paragraph and, as a citation to the summary judgment record, says only that it "respectfully refers the Court to the Assignment for the Benefit of Creditors for its true and complete terms and conditions."  Defendant's Responsive SMF ¶ 5.  The Assignment for the Benefit of Creditors is a 23-page document.  Assignment for Benefit of Creditors (Exh. 2 to Unopposed Motion for Leave to Withdraw (*Granja Planalto v. Avian Farms International, Inc.*, Maine Superior Court (Kennebec County) Docket No. CV-01-84) (Exh. G to Affidavit of James D. Poliquin ("Poliquin Aff.") (Docket No. 29).  This failure to provide a pinpoint citation to support the denial means that the denial will be disregarded, and the paragraph of the plaintiff's statement of material facts at issue is deemed admitted to the extent that it is supported by the citation given to the summary judgment record.

July 30, 2001 after no answer was timely filed.  *Id.* ¶ 8.  One or more insurers of the Avian Farms entities retained counsel to defend Avian Farms International, Inc., and a motion to lift the default was filed on or about July 26, 2002.  *Id.* ¶ 9.  The materials filed on behalf of Avian Farms International, Inc. to lift the default revealed that Avian Farms International, Inc. had merged into Avian Farms (USA), Inc. and was no longer in existence.  *Id.* ¶ 10.

American National Fire Insurance Company ("American National") issued an umbrella liability policy to Avian Farms, Inc., Policy No. UMB9-06-15-63-00, that was in effect for the period January 1, 1998 to January 1, 1999.  *Id.* ¶ 48.  This policy listed Avian Farms, Inc. as the named insured and was delivered to its principal place of business in Maine.  *Id.*  Ohio Casualty is the successor to American National and has assumed responsibility for the obligations under the insurance policy issued by American National to Avian Farms, Inc.  *Id.* ¶ 49.

The parties in the Avian Farms action entered into a joint stipulation on December 9, 2002 to request that the default be set aside and that the complaint be amended to include Avian Farms, Inc. and Avian Farms (USA), Inc. as additional defendants.  *Id.* ¶ 11.[3]  Former Avian Farms insurers Chubb, Hanover and American Motorists Insurance Company ("Kemper") had notice of the Avian Farms action in 2001.  *Id.* ¶ 13.  Kemper denied both a defense and indemnification to Avian Farms by letter dated November 21, 2001.  *Id.* ¶ 14.  Ohio Casualty, the defendant in this case, was placed on notice of the Avian Farms action no later than May 13, 2003.  *Id.* ¶ 15.  Planalto eventually settled its claims against certain participating insurers; the settlement included the continuation of the Avian Farms action for the purpose of obtaining a judgment against Avian Farms prior to seeking recovery from other non-participating insurers, including Kemper and Ohio Casualty.  *Id.* ¶ 17.[4]

---

[3] For the reasons stated in footnote 2, this paragraph of the plaintiff's statement of material facts is deemed admitted.
[4] For the reasons stated in footnote 2, this paragraph of the plaintiff's statement of material facts is deemed admitted.

In accordance with that settlement agreement, the parties in the Avian Farms action filed a settlement stipulation, counsel retained by the settling insurers to defend Avian Farms filed an unopposed motion for leave to withdraw, and the court entered an order entering default on April 13, 2004. *Id*. ¶ 18. Planalto filed in the Avian Farms action voluminous materials in support of its claim for damages, including reports and affidavits from several expert witnesses relating to Planalto's claim for damages. *Id*. ¶ 19.[5] The Superior Court entered a decision and order on damages dated June 8, 2007 and entered judgment that day in the principal amount of $13,220,000 plus interest. *Id*. An execution was subsequently issued by the clerk of the Superior Court. *Id*.

On February 22, 2002, counsel for Planalto wrote to Brent Twyon of Kemper advising him of the status of the Avian Farms matter and requesting copies of Kemper's denial letter to Avian Farms and the Kemper insurance policies. *Id*. ¶ 20. On March 22, 2002, counsel for Planalto received a fax from Twyon, which included the November 21, 2001 letter from Kemper to Avian Farms denying coverage. *Id*. ¶ 21. On March 25, 2002 counsel for Planalto wrote to Twyon to request again copies of the insurance policies and asking whether Kemper would reassess its position and become involved with Planalto's claims against Avian Farms. *Id*. ¶ 22. In a letter to Twyon dated September 23, 2002, counsel for Planalto advised Kemper that he intended to file an amended complaint adding Avian Farms, Inc. and Avian Farms (USA), Inc. as defendants and that discussions with counsel retained by other insurers included a possible agreement to lift the default previously entered against Avian Farms International, Inc. *Id*. ¶ 23. Counsel for Planalto also sent Twyon a copy of an October 9, 2002 letter to counsel for Avian

---

[5] The defendant purports to qualify and deny this paragraph of the plaintiff's statement of material facts, but the only citations given to the summary judgment record in support of the qualification or denial address only a qualification that does not address the portion of the plaintiff's paragraph which I have included in the text above. Defendant's Responsive SMF ¶ 19. Accordingly, the portion of the paragraph repeated in the text is deemed admitted, as it is supported by the citation to the summary judgment record given by the plaintiff.

Farms retained by Chubb so that Kemper could be allowed to weigh in on the issues being addressed in the settlement stipulation. *Id*. ¶ 24.

On October 18, 2002, counsel for Planalto wrote to Kemper and Hanover asking them to let him know by a date certain whether they intended to weigh in on the proposed lifting of the default and amendment of the complaint. *Id*. ¶ 25. Receiving no such response from Kemper, he wrote to Twyon on November 12, 2002, stating:

> Since I have not heard from you in response to my various correspondence and a voice mail message, I assume the Kemper stands on its earlier denial and does not intend to get involved in this matter in any way. If that is incorrect, you must let me know immediately. Otherwise, I will proceed as if Kemper has declined to become involved.

*Id*. ¶ 26.[6]  By letter dated February 5, 2003, Maria Alford of Kemper advised counsel for Planalto that Kemper's "position remains unchanged from that of our prior letters issued 9/19/01 and 11/21/2001[.]" *Id*. ¶ 29.

In May 2003, counsel for Planalto acquired information that a Mr. Danehy was the proper contact person for Ohio Casualty and faxed him a letter dated May 13, 2003, advising him of the status and identity of the other insurers involved in the Avian Farms action. *Id*. ¶ 30. In early June 2003, counsel for Planalto was advised that the appropriate contact person at Ohio Casualty was David Hanna. *Id*. ¶ 31. On June 17, 2003, counsel for Planalto wrote to Hanna advising him that Kemper had disclaimed coverage and inquiring as to whether Ohio Casualty intended to become involved; included in the letter was a binder of materials that included a 19-page letter asserting a damages claim in excess of $20 million. *Id*. ¶¶ 32-33.[7] On June 24, 2003, Hanna

---

[6] The defendant purports to qualify and to deny paragraph 26 of the plaintiff's statement of material facts but provides no citation to the summary judgment record that supports a denial. Defendant's Responsive SMF ¶ 26. For the reasons stated in footnote 2, the paragraph is deemed admitted.
[7] The defendant purports to deny the relevant portions of paragraphs 32-33 of the plaintiff's statement of material facts. Defendant's Responsive SMF ¶¶ 32-33. For the reasons stated in footnote 2, those portions of the paragraphs are deemed admitted.

wrote to counsel for Planalto, advising that Ohio Casualty had retained an attorney to represent its interests and requesting information relating to Kemper and Chubb. *Id.* ¶ 35. On June 30, 2003, counsel for Planalto wrote to Hanna, providing him with the requested information. *Id.* ¶ 36.[8] On June 30, 2003, Attorney Richard Byrne, on behalf of Ohio Casualty, wrote to Attorney Paul Catsos, who had been retained by Chubb, with copies to various other counsel confirming that Ohio Casualty had assumed responsibility for the umbrella liability policy originally issued to Avian Farms by American National Fire Insurance Company. *Id.* ¶ 37.

On December 16, 2003, counsel for Planalto wrote to Catsos with copies to other counsel discussing mediation dates and stating his belief that the excess insurance carriers, U.S. Fire and Ohio Casualty, should be active participants in a mediation and that the case was unlikely to settle at that time if the excess carriers "decline to give serious consideration to their exposure." *Id.* ¶ 38. On December 19, 2003, Attorney Eileen de Callies, representing Ohio Casualty, responded to the December 16 letter, stating in part that "unless Kemper participates in any mediation planned by the parties, Ohio Casualty's attendance would be a futile exercise." *Id.* ¶ 39. On January 2, 2004, counsel for Planalto wrote to de Callies, responding to the December 19 letter and stating in part: "I interpret your letter to mean that Ohio Casualty has no intention of participating in any mediation or any other aspect of this case voluntarily in the absence of Kemper's involvement, and willingly undertake [sic] whatever risks are associated with that path. In light of that decision, I will not be making any efforts in the future to involve you in any mediation or other developments in the case. Please advise if I have misunderstood your position." *Id.* ¶ 40. Neither Ohio Casualty nor its counsel responded in any way to the January 2 letter, and Ohio Casualty made no inquiry about the status of the case until after the entry of

---

[8] The defendant purports to qualify and to deny paragraph 36 of the plaintiff's statement of material facts. Defendant's Responsive SMF ¶ 36. For the reasons stated in footnote 2, the paragraph is deemed admitted.

judgment in the Avian Farms action. *Id*. ¶ 41.[9]  After receipt of the January 2 letter, Hanna made

an entry on January 7, 2004 in his claim file notes at Ohio Casualty that included the following:

"PC has invited us to participate in a mediation.  Kemper, the carrier below us was not invited.

We have declined to participate.  PC now indicates that he will move forward without us and

possibly take direct action in the future.  Avian Farms is now out of business.  I doubt that we

will hear more on this matter."   *Id*. ¶ 42.   Ohio Casualty and Kemper did not have any

communication with each other regarding Planalto's claims against Avian Farms during the

period  May  2001  through  May  2007.   *Id*. ¶ 43.[10]   Ohio Casualty received no further

communication from Planalto and no further notice regarding the status of the matter after the

January 2, 2004 letter.  Defendant Ohio Casualty's Additional Facts ("Defendant's SMF")

(included in Defendant's Responsive SMF, beginning at 7) ¶ 70; Plaintiff Planalto's Response to

Defendant Ohio Casualty's Additional Statement of Material Fact (Docket No. 53) ¶ 70.

On September 10, 2002, the assignee for the benefit of creditors of Avian Farms, William

Brandt, and Planalto entered into an Agreement and Covenant Not to Execute pursuant to which

Planalto agreed to withdraw its proof of claim on the assignment estate of Avian Farms and to

limit its recovery on any judgment to available insurance proceeds.  Plaintiff's SMF ¶ 47;

Defendant's Responsive SMF ¶ 47.[11]

### C.  Discussion

The plaintiff invokes the legal doctrines of collateral estoppel and estoppel by judgment

to support its contention that the defendant is bound by the judgment entered in the state court

---

[9]  The defendant purports to deny this paragraph of the plaintiff's statement of material facts, Defendant's
Responsive SMF ¶ 41, but that denial does not address the factual assertions in the paragraph at issue.  The
paragraph is deemed admitted.
[10] The defendant purports to deny paragraph 43 of the plaintiff's statement of material facts, Defendant's Responsive
SMF ¶ 43, but that denial does not address the factual assertions in the paragraph at issue.  The paragraph is thus
deemed admitted.
[11] The defendant purports to qualify and to deny paragraph 47 of the plaintiff's statement of material facts.
Defendant's Responsive SMF ¶ 47.  For the reasons stated in footnote 2, the paragraph is deemed admitted.

action as to both liability and damages. Motion for Partial Summary Judgment on Matters Already Determined in Prior Civil Action ("Summary Judgment Motion") (Docket No. 27) at 8. The Maine reach and apply statute, on which the plaintiff also relies, provides, in relevant part:

> Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage [for which insurance coverage exists], the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action . . . against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. The insurer shall have the right to invoke the defenses described in this section in the proceedings. None of the provisions of this paragraph . . . shall apply:

> **1. Motor vehicle operated illegally or by one under age.** When the insured automobile, motor vehicle or truck is being operated by any person contrary to law . . . ; or

> **2. Motor vehicle used in race contest.** When such automobile, motor vehicle or [truck] is being used in any race or speed contest; or

> **3. Motor vehicle used for towing a trailer.** When such automobile, motor vehicle or truck is being used for towing or propelling a trailer unless such privilege is indorsed on the policy or such trailer is also insured by the insurer; or

> **4. Liability assumed.** In the case of any liability assumed by the insured for others; or

> **5. Liability under workers' compensation.** In the case of any liability under any workers' compensation agreement, plan or law; or

> **6. Fraud or collusion.** When there is fraud or collusion between the judgment creditor and the insured.

24-A M.R.S.A. § 2904.

The plaintiff takes the position that the list of exceptions is exclusive. Summary Judgment Motion at 10. The defendant takes the opposing view. Defendant Ohio Casualty's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Summary Judgment

Opposition") (Docket No. 39) at 10. The plaintiff is correct. The Maine Law Court has held explicitly that "the Legislature, in enacting Maine's reach and apply law, intended to limit the defenses available under Maine law . . . by allowing insurers to raise only the defenses specifically set forth in the statute. We hold that section 2904 contains an exclusive list of defenses available to insurers in reach and apply actions." *Michaud v. Mutual Fire, Marine & Inland Ins. Co*., 505 A.2d 786, 789 (Me. 1986). The defendant suggests that a 2005 decision of this court (Cohen, M.J.) rejected limiting insurers to the defenses enumerated in the statute. Summary Judgment Opposition at 10-11. However, that is not an accurate reading of Judge Cohen's recommended decision, subsequently adopted over objection by Judge Hornby's Order [dated May 31, 2005] Adopting Report and Recommendations, *United States of America v. Water Quality Ins. Syndicate* (Docket No. 03-181-P-H). Far from rejecting the application of the exclusive defenses in Maine's reach and apply law, Judge Cohen only concluded, after reviewing relevant Law Court decisions, that "the most reasonable construction of the plain language of section 2904 is that the third party must establish that there is coverage under the policy at issue and that the insurer had notice of the underlying action or damage, before the question of the application of the exclusive defenses listed in the statute is reached." *United States of America v. Water Quality Ins. Syndicate*, 2005 WL 950643 (D. Me. Apr. 26, 2005), at *5. My analysis will follow this path.

On the issue of notice, the defendant begins by asserting that it "was never given notice by its insured of any claim." Summary Judgment Opposition at 11. But, section 2904 does not require by its terms that the notice be given by the insured. It is enough that the insurer have notice "before the recovery of the judgment." The defendant also states that "[a]t no time did [it] issue a declination of coverage, nor was [it] ever asked to participate in a settlement or defense of

the underlying action by its insured (which had assigned its rights to Planalto in September 2002)[12] or its underlying primary insurers."  Again, section 2904 does not require that an excess or umbrella insurer be asked to participate in a defense or a settlement by its underlying carrier in order for the statute to be applicable.  It only requires that the insured have been insured by the insurer, of whatever kind, at the time the underlying cause of action accrued.  Nor is an insurer's denial of a requested defense a prerequisite for application of section 2904.

For purposes of the instant motion, the defendant does not argue at this stage that there is no coverage under the policy or policies at issue.  Accordingly, I conclude that the first portion of the statutory test, as articulated in *Water Quality*, has been met for purposes of this motion. With respect to notice before recovery of judgment in the underlying action, the defendant contends that it was not provided with a meaningful opportunity to defend its interests, citing *MacDowall v. MMG Ins. Co.*, 2007 ME 56, 920 A.2d 1044.  *Id.* at 12.[13]  The apparent reference is to language appearing at ¶ 8, page 1046 of that opinion, which reads as follows:  "Although the plain language of the statute merely requires notice before the judgment is recovered, we have determined that to comport with due process notice must be given at a meaningful time in the proceedings."  The Law Court noted that it had previously determined that notice given after entry of a default on liability but before that default was rendered final met this standard.  *Id.* Here, the defendant was given notice no later than May 13, 2003 of the underlying action, well before the default judgment was entered on April 13, 2004.  The defendant asserts that it "was clearly denied notice constituting a meaningful opportunity to be heard due to the fact that [] it was not afforded with notice of the assignments, settlements, default or opportunity to participate

---

[12] Because the statute does not require that notice be provided to the insurer by the insured, the defendant's further assertion that "Planalto was obligated, as assignee of Avian, to provide Ohio Casualty with notice of the events in the Underlying Action," Summary Judgment Opposition at 12, is incorrect.

[13] Counsel for the defendant is reminded that this court expects pinpoint citations whenever a case is cited for a specific proposition.

in a damages hearing."  Summary Judgment Opposition at 13.  But the Law Court's explication of section 2904 has never required specific notice of each stage of the underlying action.  It merely requires notice sufficiently in advance of the recovery of the judgment to allow the insurer, if it chooses, to act to protect its interests.  The defendant in this case had such a meaningful opportunity.  The defendant cites no other authority for its contention that section 2904 imposes upon an insured a continuing obligation to provide specific notice of developments in the underlying action, and I am not aware of any.  On the showing made, I can only conclude that the notice provided to the defendant was sufficient.

The defendant next argues that it may only be bound in this action "to those facts which were essential to the underlying judgment[,]" citing *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 296 (1st Cir. 2005).  *Id*. at 14.  This assertion is correct so far as it goes.  The defendant essentially contends that it is entitled to relitigate the plaintiff's damages, apparently because it asserts that "the amount was not reasonable or not entered into in good faith" or where "the question of coverage turns on facts which were not essential to the underlying judgment of liability."  *Id*. at 14-15.  It goes on to assert that "[t]he <u>only</u> fact essential to the underlying judgment is that Avian was negligent in providing chicks to Planalto with the J-Virus."  (Emphasis in original.)  *Id*. at 15.  It then lists five specific questions that it contends were not essential to the underlying judgment.  *Id*. at 15-16.  The listed questions go to whether coverage is afforded under the Ohio Casualty policy.  For the reasons already discussed, coverage has not been contested for purposes of the instant motion.  The defendant is most decidedly not entitled to "litigate all other factual issues" in this proceeding.  *Id*. at 16.[14]

---

[14] The plaintiff makes clear that it "does <u>not</u> maintain that Ohio Casualty has forfeited its actual coverage defenses <u>by not participating in the underlying case</u>, but only the right to challenge the liability and damage determinations and facts <u>necessary</u> to those determinations.  The true coverage issues remain to be litigated another day."

The defendant next asserts that it "cannot be held liable for an unchallenged amount judicially determined after an uncontested presentation of damages" under the circumstances of this case.  *Id.*  It relies heavily in this portion of its memorandum on the Law Court's decision in *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, 905 A.2d 819, Summary Judgment Opposition at 16-18, a case that involved a primary insurer that had provided the insured with a defense but had issued a reservation of rights and whose motion to intervene in the underlying case had been denied, 2006 ME 72 ¶¶ 4-6, 905 A.2d at 823.  The trial court in that case determined damages after a stipulated judgment was entered.  *Id.* ¶ 5, at 823.  The Law Court held that the insurer was entitled to be heard on the reasonableness of the damages award.  *Id.* ¶ 23, at 829.

On the other hand, the plaintiff contends that the Law Court's earlier decision in *Elliott v. Hanover Ins. Co.*, 1998 ME 138, 711 A.2d 1310, held "unequivocally that an insurer who declines an opportunity to litigate an underlying case is bound by the liability and damage findings in that case."  Summary Judgment Reply at 10.  Plaintiff's argument, however, places too much weight on the Law Court's statement in *Elliott* that the insurer "is also bound by the default judgment as to any factual issues that might have been litigated in the underlying negligence action."  1998 ME 138 ¶ 11, 711 A.2d at 1314.  In fact, the Law Court followed that statement with the following: "Because we conclude that the matter must be remanded to the trial court for a determination whether Elliott's injury was covered by the policy, it is premature to address Elliott's and Hanover's challenge to the court's damage award[.]"  *Id.*

In addition, *Elliott* was decided eight years before *Harris,* where the Law Court was fairly clear eight years later on the question of relitigation of damages under circumstances very similar to those presented here.  At oral argument and in Plaintiff's Summary Judgment Reply,

_____

Plaintiff's Reply Memorandum of Law in Support of Motion for Partial Summary Judgment ("Summary Judgment Reply") (Docket No. 52) at 10 n.8 (emphasis in original).

counsel for the plaintiff, who was counsel for the appellant in *Elliott*, suggested facts about the *Elliott* case that are not reported in the decision, Summary Judgment Reply at 10, but this court cannot interpret case law on the basis of such extraneous information.  Based on the language of *Elliott* and my conclusion that the factual differences between the instant case and those in *Harris* do not compel a different result, I conclude that the defendant is not bound by the determination of damages made by the state court, if it can show that the damages judgment was unreasonable.  It may attempt to make that showing in this case.  It is important to note at this juncture that what *Harris* compels here is not, strictly speaking, a relitigation of the issue of damages.  Rather, the burden is on the insurer who declined to participate below to prove that the damages awarded below were unreasonable.

My conclusion is buttressed by the Law Court's observations in two of the cited cases.  In *Michaud*, the Law Court noted that the insurer "had full opportunity to participate in the hearing on damages," 505 A.2d at 791, as Ohio Casualty would have had if it had not chosen to respond to its receipt of adequate notice of the proceeding below by closing its file and ignoring the matter.  Even more to the point, in *Perry*, the Law Court held that "[a]n insurer is liable [following a wrongful refusal to defend its insured] only if the settlement amount is reasonable and is made in good faith."  *Id*. at 1391.  The fact that the state trial court determined the amount of damages in the underlying action in the instant case certainly makes that amount appear to be more objectively reliable than an amount determined by settlement, but still, only one side of that particular damages issue was presented to the court.  The *Harris* court did not find that difference, that is judicial determination after an uncontested presentation of damages,[15]

---

[15] On May 9, 2008, almost three weeks after oral argument had been held on the pending motions, the defendant filed a motion for leave to amend its responsive statement of material facts based on a newly-acquired transcript from the damages portion of the underlying state court action.  Docket No. 65. The plaintiff opposed the motion, contending, *inter alia*, that the defendant could have obtained the transcript earlier and speculating about the motives

sufficient to allow the insured to recover the full amount of its determined damages from the insurer automatically. 905 A.2d at 827. Counsel for the plaintiff contended at oral argument that *Harris* must be distinguished from the instant case because the insurer in *Harris* was rebuffed by the trial court when it attempted to intervene in the underlying action. I do not find any reasoning in the *Harris* opinion that supports this distinction. The *Harris* court in fact found specifically that the insurer "was not denied a meaningful opportunity to contest liability under the insurance policy." *Id*. at 826.

Accordingly, I recommend that the plaintiff's motion for partial summary judgment be granted as to liability and denied only insofar as the defendant can demonstrate that the amount of damages awarded by the state court was unreasonable.

## II.  Motion to Strike and for Summary Judgment

The plaintiff's second motion asks the court to strike certain affirmative defenses pled by the defendant or, in the alternative, to enter summary judgment on them. Motion to Strike Certain Defenses Pursuant to Rule 12(f) and Motion for Summary Judgment on Other Affirmative Defenses ("Motion to Strike") (Docket No. 30). I grant the plaintiff's motion as to affirmative defenses numbered 3-8, 13, 15, and 22-23 and otherwise deny it. The few additional facts submitted by the parties as undisputed and material to this motion will be mentioned when relevant in my discussion of the merits of the motion. The specific affirmative defenses addressed by the motion are numbers 2-3, 5, 7-8, 13, 15 and 22-23 in the defendant's first amended answer.[16] *Id*. at 1-2.

---

of the defendant's counsel. Plaintiff's Opposition to Defendant Ohio Casualty's Motion for Leave to Amend (Docket No. 68) at 3-4. I have granted the motion but note that the additional factual assertions have no effect on my analysis of, and conclusions regarding, the issue before me.

[16] The defendant asserts that it "has previously withdrawn" its asserted affirmative defenses numbers 4 (fraud and collusion) and 6 (failure to state a claim upon which relief may be granted). Opposition to Motion to Strike Certain Defenses ("Strike Opposition") (Docket No. 42) at 4; *see also* First Amended Answer ("Answer") (Docket No. 21). Although I see no indication on the docket that the defendant withdrew any of its affirmative defenses, its motion to

## A.   Applicable Legal Standards

To the extent that this motion seeks summary judgment, the legal standard set forth above in connection with the plaintiff's first motion for summary judgment is applicable here as well. With respect to the request to strike pursuant to Fed. R. Civ. P. 12(f), a motion to strike a defense should be granted only if the insufficiency of a defense is clearly apparent.  5C C. Wright & A. Miller, *Federal Practice & Procedure* § 1381 at 428 (3d ed. 2004).  A defense is "legally insufficient" if it appears that the movant "would succeed despite any state of facts which could be proved in support of the defense."  *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990) (citation and internal quotation marks omitted).

## B.   Discussion

*1. Fifth affirmative defense.*  The plaintiff begins with affirmative defense number 5, which asserts that the plaintiff's complaint is barred by the doctrine of laches.  Answer at 4.  It points out that an action may not be brought under the Maine reach and apply statute until the claimant acquires the status of judgment creditor.  Motion to Strike at 5.  The plaintiff filed this action within a few days after the judgment in the state court action became final.  *Id.*

The defendant responds that it "raises the affirmative defense of laches in response to the unreasonable and unexplained period of three years it took Planalto to obtain a final judgment and initiate this reach and apply action."  Strike Opposition at 4.  It asserts that it "is particularly prejudiced in this matter, and the laches defense is particularly applicable here, given the difficulty in locating witnesses and obtaining documents three years after default has been

---

strike the collusion portion of its affirmative defense number 4 was granted.  Docket Nos. 24 & 25.  In any event, I conclude, based on the briefs and counsel's representation at oral argument, that the defendant now consents to the motion to strike its affirmative defenses number 6 and what remains of number 4, and I recommend that the court grant that portion of the instant motion.

entered, in order to assess whether there is coverage under the Ohio Casualty policy and whether the damages award is reasonable." *Id*. at 5.  I note that the defendant has already been able to marshal a great deal of evidence in support of its contention that the damages award entered by the state court was unreasonable.  In addition, it does not cite any authority for the proposition that laches may be asserted as a defense in a reach and apply action when the only delay alleged occurred in the underlying tort case.  The defendant received notice of the underlying action in time to allow it to participate in the settlement and the damages hearing but chose not to become involved.  Under these circumstances, it would be illogical, if not anomalous, to allow a duly-notified insurer to refuse to become involved in an action against its insured and yet still be allowed to raise the defense of laches as to that underlying action.

The fifth affirmative defense should be stricken.

*2. Third affirmative defense.*  The plaintiff next attacks the affirmative defense of unclean hands. Motion to Strike at 6.  Because this defense is not listed in section 2904, the plaintiff contends, it may not be raised in this action.  The defendant appears to cite authority for the proposition that the defense may not be stricken for this reason, Strike Opposition at 5, but neither of the cited cases so holds.  In fact, neither of them mentions section 2904 and neither is applicable here for any other apparent reason.  *Hamm v. Hamm*, 584 A.2d 59 (Me. 1990) (constructive trust); *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806 (1945) (patent infringement and breach of contract). Nor do either of the two other Maine cases cited by the defendant in support of its assertion that "Maine courts have permitted insurers to advance valid defenses which are not specifically set forth in . . . § 2904," *id*., support that contention.  In both *Harris*, 905 A.2d at 828 (discussing collusion, a listed defense), and *Marston v. Merchants Mut. Inc. Co*., 319 A.2d 111, 114 (Me. 1974), the court discusses no "defense" other than those listed

in section 2904, although it does address the question whether coverage exists, as discussed in *Water Quality*, as I have previously noted. The rest of the defendant's argument, *id*. at 5-6, is a recasting of a fraud defense and provides no reason to reject the Law Court's clear statement in *Michaud*, 505 A.2d at 789, that the defenses listed in section 2904 are in fact the only defenses available, once coverage and notice have been established, *Water Quality*, 2005 WL 950643 at *5.

The third affirmative defense should be stricken.

*3. Twenty-second affirmative defense*.   The twenty-second affirmative defense alleges that the plaintiff's claim is barred by the "economics [sic] loss doctrine."   Answer at 6.   The plaintiff contends that this defense "would at best have been a defense to liability in the underlying case[]" and thus may not be raised here.   Motion to Strike at 7.   The defendant responds that it "has a valid defense that the damages Planalto alleges to have sustained were not the result of 'property damage,' but merely breach of contract resulting in economic loss."   Strike Opposition at 7.   So stated, this is a defense to liability in the underlying action, and the issue cannot be litigated in this reach and apply action.    The defendant also asserts that this defense should not be stricken because "it is directly related to whether coverage exists under the policy."   *Id*.   The question as to whether coverage exists under the policy at issue is indeed the question to be answered, and characterizing it as involving the "economic loss doctrine" does not make it into something else.   The economic loss doctrine is not necessary to the defendant's position that there is no coverage for Avian Farms under its excess policy, if that is the defendant's position. It exists in addition to that legal position, adds nothing to the court's construction of the policy terms and has no place in this action.

The twenty-second affirmative defense should be stricken.

*4. Thirteenth affirmative defense.*  The thirteenth affirmative defense alleges that the plaintiff failed to mitigate its damages.  Answer at 5.  The plaintiff asserts that the defendant "has no right to litigate a 'mitigation of damages' defense . . . because the damages awarded to Planalto already have been established in a binding judgment."  Motion to Strike at 7.  I have concluded, for the reasons already discussed, that the defendant may attempt in this action to prove that the damages awarded in the state court action were unreasonable.   The defendant contends that "[o]ne indicia [sic] of an excessive and unreasonable damage award is the claimant's failure to mitigate damages[.]"  Strike Opposition at 8.  Again, the defendant seeks to plead the same claim in two different ways.  It may attempt to prove that the damages award in the underlying action was unreasonable.  It does not need the affirmative defense of failure to mitigate in order to do so.  This defense is not among those specified in section 2904.  For both of these reasons, the thirteenth affirmative defense should be stricken.

*5. Fifteenth affirmative defense.*  The fifteenth affirmative defense alleges that the defendant is not liable for "costs and/or expense that were unreasonable or unnecessary or were incurred voluntarily or without Ohio Casualty's consent," because "there is no coverage under the Ohio policy."  Answer at 5.  Merely to state the asserted defense makes it evident that this is a claim that there is no coverage under the policy at issue for certain costs.  Coverage is very much at issue in this action, but again, there is no need to state the issue in multiple ways and multiple times in the answer.   Also again, this defense is not listed in section 2904, and the defendant will be allowed to demonstrate that the damages award in the state court was unreasonable.  The fifteenth affirmative defense should be stricken.

*6. Seventh affirmative defense.*  The seventh affirmative defense alleges as follows: "To the extent that all conditions precedent and subsequent to the triggering of liability or coverage, if

any, under the Ohio Casualty policy have not been fulfilled, Ohio Casualty has no obligations under its policy."   Answer at 4.   The plaintiff argues that this defense "must be stricken on grounds of vagueness."   Motion to Strike at 9.   The defendant responds that vagueness is not a ground for granting a motion to strike under Rule 12(f) and that "the failure to fulfill a condition precedent or subsequent is a valid defense to the existence of coverage[.]"   Strike Opposition at 10.   As stated previously, coverage remains at issue in this case, and there is no need to state that fact many times in many different ways.   This affirmative defense, as characterized by the defendant, is unnecessary and should be stricken.

*7.   Eighth affirmative defense*.   The eighth affirmative defense alleges that the defendant was not provided with sufficient notice of the claim "as required under the terms of the  . . . policy."   To the extent that this defense is intended to allege a lack of coverage, Strike Opposition at 9-10, it is unnecessary for the reasons already stated.   To the extent that it is intended to avoid the action under section 2904 altogether, *id*. at 9, I have already concluded that the notice provided to the defendant was sufficient for the purposes of that statute.   Accordingly, the eighth affirmative defense should be stricken.

*8.   Twenty-third affirmative defense.*   The twenty-third affirmative defense alleges that the defendant "is under no obligation to provide coverage because of a violation of the policy's condition which provides: 'Your rights and duties under this policy may not be transferred without our written consent . . .".   Answer at 6.   The plaintiff contends that Avian Farms' assignment for the benefit of creditors on June 28, 2000 did not void the insurance policy under this clause.   Motion to Strike at 9-10.   Its first argument is that its right as a judgment creditor

became fixed at the time of the occurrence, citing 24-A M.R.S.A. § 2903,[17] and that events taking place thereafter cannot modify or eliminate that right.  *Id*. at 10.  It also contends that "the Law Court has held unequivocally that an insured's breach of any condition under a policy is not a defense to a reach and apply action unless specifically stated in Section 2904."  *Id*. at 10-11.

The defendant appears to agree with the plaintiff's first argument, stating that "assignments of liability policies made before a loss occurs, without the consent of the insurer, are generally ineffective."  Strike Opposition at 10.  However, it does not then attempt to show that the assignment in this case took place before the loss at issue occurred, or indeed mention the standard again in any way.   The defendant does not address the plaintiff's assertion that any losses for which it may seek coverage from the defendant must have taken place prior to January 1, 1999, when the defendant's policy expired, a date well before the date of the assignment in 2000.  Plaintiff Planalto's Reply Memorandum in Support of Motion to Strike ("Strike Reply") (Docket No. 55) at 6.

Maine law provides that an insured may assign his interest under a policy of insurance after the event giving rise to liability of the insurer on the policy occurs.  *Warner v. Narragansett Mut. Fire Ins. Co.*, 90 A. 706, 707 (Me. 1914).  *See also Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 468 A.2d 315, 317 (Me. 1983) ("Under the doctrine of assignment, after the fire loss had occurred, the [insureds] were free to sell to a third party whatever claim they may have had against their insurer.").   The assignment in this case is indistinguishable from the assignments in those cases.

This conclusion makes it unnecessary to consider the plaintiff's remaining arguments. The twenty-third affirmative defense should be stricken.

---

[17] The statute provides, in pertinent part: "The liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs."

*9.  Second affirmative defense.*  The plaintiff's final target is the second affirmative defense, which alleges that the plaintiff's claims are barred "in whole or in part by the doctrine of release."  Answer at 3.  The plaintiff asserts that Planalto did not release Avian Farms and that its agreement not to execute against Avian Farms' assets "does not constitute a release subsequently prohibiting a reach and apply action."   Motion to Strike at 15. The defendant's response, however, is based on a term of the policy, Section IV(D).  Strike Opposition at 12-14.  In reply to that argument, the plaintiff contends, without citation to authority, that "this condition in the Ohio Casualty policy does not trump the application of the reach and apply statute."   Strike Reply at 7.  As the plaintiff points out, *id.*, under Alabama law, when an insurer on notice refuses to participate in settlement negotiations it waives the right to assert the no-action clause in a later suit to determine coverage.  *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007).   On the brief showing made by the plaintiff, a single paragraph, I am not willing to predict that the Maine Law Court would adopt this principle.  On the showing made, the second affirmative defense should not be stricken.

### III.  Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for partial summary judgment (Docket No. 27) be **GRANTED** as to liability and otherwise **DENIED.  I GRANT** the plaintiff's motion to strike (Docket No. 30) as to the affirmative defenses numbered 3-8, 13, 15, and 22-23; that motion is otherwise **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of May, 2008.

/s/  John H. Rich III

John H. Rich III
United States Magistrate Judge