UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GRANJA PLANALTO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 07-142-P-H |
| | ) | |
| OHIO CASUALTY INSURANCE CO., | ) | |
| | ) | |
| Defendant | ) | |

*MEMORANDUM DECISION ON DISCOVERY DISPUTE/MOTION TO COMPEL*

In accordance with the terms of my Report of Hearing and Order re: Discovery Dispute dated January 11, 2009 (Docket No. 95), the parties have submitted timely supplemental briefs concerning, *inter alia*, whether about 1,000 pages of documents, withheld by the plaintiff, Planalto, from the file of the law firm Thompson & Bowie pertaining to its defense of Avian Farms in the case underlying this reach-and-apply action, are protected by the work product doctrine. Those briefs address whether the work performed by Thompson & Bowie in that underlying action was performed solely for Avian Farms, the insured, or for Avian Farms and the insurers who retained Thompson & Bowie. The parties were also directed to examine how this question affected the scope of the application of the work product doctrine to materials provided to Granja Planalto by Thompson & Bowie.

For the reasons that follow, I now deny the defendant, Ohio Casualty's, request seeking to compel the production of the approximately 1,000 pages that have been withheld. I also deny Ohio Casualty's request for communications between Planalto's employee experts and Planalto's counsel pursuant to the attorney-client privilege.

## I. The Work Product Issue

With respect to the 1,000 pages at issue, the two questions for supplemental briefing are so phrased largely because Ohio Casualty claims that Fed. R. Civ. P. 26(b)(3) defines the work product doctrine only in terms of parties to the action presently pending. Accordingly, since none of the settling insurers is a party to this action, Ohio Casualty argues that Planalto may not withhold any documents created in the underlying action on the basis of the work product doctrine. Planalto contends that Avian Farms had ceased all business activities at the time of the underlying action and had assigned all of its remaining assets for the benefit of its creditors, so only the insurers who retained Thompson & Bowie could have been, in actuality, the law firm's clients. Planalto's Supplemental Memorandum on Discovery Conference Issues ("Planalto Supplement") (submitted by e-mail to newcases.portland@med.uscourts.gov and thus not appearing on the docket) at 1-4. Ohio Casualty now takes the position that whether the insurers were clients of Thompson & Bowie is irrelevant; the real issue, it asserts, is "for what purpose and on whose behalf the work product was produced." Defendant Ohio Casualty's Supplemental Memorandum Regarding its Motion to Compel the Thompson and Bowie Documents that Have Been Withheld by Plaintiff Granja Planalto ("Ohio Casualty Supplement") (submitted by e-mail to newcases.portland@med.uscourts.gov and thus not appearing on the docket) at 1.

Ohio Casualty appears to concede, Ohio Casualty Supplement at 5, Planalto's argument that it was no longer adverse to Avian Farms when it obtained the documents at issue pursuant to its settlement agreement with Avian Farms' insurers,[1] contrary to Ohio Casualty's initial

---

[1] At some point in this dispute, Ohio Casualty argued that, because it was Avian Farms' umbrella insurer, even though it issued a reservation of rights with respect to the underlying action and declined an express written invitation to participate in the defense of that action and again in the discussions that led to its settlement, it is nonetheless entitled to see all of the documents generated by Thompson & Bowie because it is one of Avian Farms's insurers and it *could* have participated in the underlying action. It cited no authority for this argument, which would, if adopted, encourage umbrella insurers to decline to participate in defending their insureds, only to take advantage

argument that Avian Farms and/or its insurers waived the protection of the work product doctrine when the documents were transferred to Planalto. This concession comports with applicable First Circuit precedent to the effect that the work product doctrine is "not as easily waived as the attorney-client privilege," and that "only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997). After the settlement of the underlying case, disclosure of materials held by Thompson & Bowie to Planalto was required by the settlement agreement and was not inconsistent with keeping it from an adversary. Planalto clearly was no longer an adversary of Avian Farms at that point, even assuming that it had been earlier. Nor was it an adversary of the settling insurers.[2]

Ohio Casualty's argument that Planalto was not involved in a joint defense with Avian Farms at any time and therefore "has no authority to preclude disclosure of work product generated for Avian Farms," Ohio Casualty Supplement at 5, sets up a straw man. Planalto has never made such an argument, and the case law Ohio Casualty cites is limited to circumstances in which joint defense agreements did exist.

Ohio Casualty devotes considerable effort to its contention that Avian Farms is not a party to the settlement agreement, that Planalto is only required by the terms of that agreement to defend and indemnify the settling insurers, and therefore that it cannot invoke the agreement as the basis of its assertion of work product protection. *Id*. at 2-5. But that argument ignores the fact that Avian Farms's assignee is apparently a party to the settlement agreement, *see*

---

of the work of other insurers if the insured or the other insurers eventually sought to recover against it. I reject this self-serving view of the landscape of insurance law.

[2] Ohio Casualty contends that Thompson & Bowie represented only Avian Farms in the underlying action because "Chubb and Hanover [,the primary insurers,] would have retained separate coverage counsel to represent their respective interests if there had been a coverage dispute." Ohio Casualty Supplement at 8. While this may be true, what might have been in the past is not relevant here. It is the fact that there was no coverage dispute and the fact that the interests of Avian Farms and its primary insurers did not differ at any point in the underlying action that are relevant now.

Settlement Agreement and Release (Docket No. 43-4) at 1, whom Planalto did agree to indemnify, *id.* ¶¶ 3 & 7, making it at least arguable that Planalto has in fact succeeded to Avian Farms's interest in the documents. Nor is Planalto's indemnification argument the only basis it asserts for invoking the protection of the doctrine.

Planalto cites case law holding that defense counsel retained by an insurer to defend its insured represents both the insurer and the insured in the absence of a conflict. Planalto Supplement at 4-5; *see generally Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Ct.*, 152 P.3d 737, 741 (Nev. 2007) (this is "majority rule"); *Spratley v. State Farm Mut. Automobile Ins. Co.*, 78 P.3d 603, 607 (Utah 2003); *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 24 P.3d 593, 598 (Ariz. 2001); *State Farm Mut. Automobile Ins. Co. v. Federal Ins. Co.*, 72 Cal.App.4th 1422, 1428-29, 86 Cal.Rptr.2d 20, 24-25 (1999). Given that Avian Farms was, as Planalto terms it, "defunct" by the time that the underlying action was brought, it is difficult to discern how its interests could have conflicted with those of its primary insurers. None of its assets were in jeopardy; it had none.

Ohio Casualty's view of the strictures of Rule 26(b)(3) is opposite to that of the emerging majority of courts, which hold that work product protection extends from one case to subsequent litigation. *See, e.g., Louisiana Muni. Police Emps. Retirement Sys. v. Sealed Air Corp.,* 253 F.R.D. 300, 309 & n.3 (D.N.J. 2008), and *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 286 (N.D. Ill. 1997).

Even more valuable for purposes of the present dispute is Judge Carter's decision in *Gale v. Norton*, 208 F.Supp.2d 63 (D. Me. 2002), in which he found that the documents at issue in a discovery dispute had been "created in anticipation of the *Defenders of Wildlife* suit," *id*. at 67, an earlier action in the District of Columbia. He wrote:

4

> In *FTC v. Grolier, Inc.*, 462 U.S. 19, 28 . . . (1983), the Supreme Court ruled that the termination of litigation does not vitiate the protection for material otherwise properly categorized as attorney work-product. In so deciding, the Court stated that "the literal language of Rule [26(b)(3)] protects materials prepared for *any* litigation or trial so long as they were prepared by or for a party to the subsequent litigation." *Grolier*, 462 U.S. at 26 (emphasis in original). Thus, in an effort to promote effective legal representation, the prevailing view is that documents prepared in anticipation of litigation are protected from disclosure even in subsequent actions. *See, e.g., Federal Election Comm'n v. The Christian Coalition*, 179 F.R.D. 22, 24 (D.D.C. 1998). The document prepared for the purposes of the *Defenders of Wildlife* action are protected from disclosure in the instant action.

208 F.Supp.2d at 67-68. The question whether documents protected by the work product doctrine may continue to be so protected in a later action has been answered in the affirmative in this district.

Thus, contrary to Ohio Casualty's contention, the question of the identity of the party or parties that were represented by Thompson & Bowie in the underlying action remains very relevant here. While Planalto was a party to the underlying action, it was not one of the parties for whom Thompson & Bowie prepared the documents when they were prepared. However, it has succeeded to the interests of the insurer parties and is the assignee of all of Avian Farms's assets. Judge Carter's observation concerning the aim of Rule 26(b)(3), to promote effective legal representation, is also particularly relevant here, where, for all that Planalto knows at this time, it will be required to indemnify these parties and defend them when Ohio Casualty looks to them for all or part of any sums for which it may be found liable in this action. The knowledge of the strategy and tactics of Thompson & Bowie in its representation of the insurers in the underlying action could also give Ohio Casualty a decided advantage in its bargaining position in the instant case, so long as the possibility of a subsequent action against those insurers remains viable.

In weighing Ohio Casualty's assertion that it needs the documents in order "to effectively evaluate either the merits of Planalto's claim in the Underlying Action or the reasonableness *vel non* of the settlement and damages award" in that action, Ohio Casualty Supplement at 6, or its assertion that it seeks the documents because they "address[] issues other than those related to Avian Farms' defense in the underlying action," *id.* at 7, it is important to remember that *only* the reasonableness of the damages award in the underlying action is at issue here.  While Ohio Casualty undoubtedly would like to see documents relevant to the merits of the underlying action, that is not the issue here, and Ohio Casualty is not entitled to discover such documents entirely independent of any interpretation of Rule 26(b)(3).  So limited, Ohio Casualty's asserted basis for its entitlement to discovery of the documents at issue cannot outweigh Planalto's interest, when the promotion of effective legal representation is the primary consideration.  *See generally United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966-67 (3d Cir. 1988) (insurer to which claim was subrogated may assert work product doctrine even if not itself named as party to action).

In addition, the documents at issue are not "in the hands of a third person who is neither a party to nor interested in" the current action.  *Ostrowski v. Holem*, 2002 WL 31956039 (N.D.Ill. Jan. 21, 2002), at *3 (citing cases and passage of 8 C. Wright, A. Miller and J. Marcus, *Federal Practice & Procedure* § 2024 (2d ed. 1994) cited by Ohio Casualty).  They are in the hands of Planalto, a party in the current case.

Considering the entirety of the circumstances, I conclude that Planalto may claim the protection of the work product doctrine for the documents at issue.  *See United States v. Textron, Inc.*, __ F.3d __, 2009 WL 136752 (1st Cir. Jan. 21, 2009), at *5 (work product doctrine "is rightly seen as a protection for the adversary system, not simply the attorney"); *Louisiana Mun*.

*Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 n.3 (D.N.J. 2008) (majority rule in District is that work-product protection applies to documents prepared for different case so long as the two cases are closely related in parties or subject matter).

Planalto is directed to provide the court with a privilege log for the 1,000 pages, so that the court record reflects the specific documents here at issue. I reject the suggestion of counsel for Planalto that the preparation of such a log would constitute an undue burden.

## II. Substantial Need

Ohio Casualty argues in the alternative that, if the documents at issue are protected by the work product doctrine under the circumstances of this case, it nevertheless is entitled to their production because it has a substantial need for the materials, in accordance with Rule 26(b)(3)(A)(ii). *Id*. at 6-8. First, it asserts that "Ohio Casualty's general and compelling need for the defense file **of its own insured** in the Underlying Action exists in order to sustain the burden, as determined by this Court, to show the unreasonableness of the underlying settlement and damages award." Ohio Casualty Supplement at 6 (emphasis in original). As I have already noted, "the unreasonableness of the underlying settlement," "the merits of Planalto's claim in the Underlying Action," "issues . . . related to Avian Farms' defense in the underlying action," and "evaluat[ion of] the merits of Planalto's claim in the Underlying Action," *id*. at 6-7, are not at issue in this proceeding. It is only the reasonableness of the damages award in the underlying action that is a "core issue[,]" *id.* at 8, of this action. In addition, the fact that Avian Farms was insured by Ohio Casualty is a ship that has sailed with respect to the position in which Ohio Casualty currently finds itself. The opportunity to assert that status and to undertake its corresponding responsibilities was presented in the underlying action; Ohio Casualty cannot now expect the court to ignore the consequences of its choice to decline at that time.

7

Ohio Casualty's assertion that "Thompson & Bowie's defense of Avian Farms is at issue in this case," *id*. at 7, offered as the basis for its claim that Thompson & Bowie's file is not available to it by any other means, under Rule 26(b)(3)(A)(ii), is incorrect. Simply put, it stretches the question of the reasonableness of the damages award in the underlying action much too far.

Planalto represents that "[t]he withheld work product materials include hundreds of pages of handwritten notes by counsel, voluminous legal research, and communications between Thompson & Bowie and potential experts that had never been disclosed in that case as testifying experts at trial[,]" but no witness statements or written communication between Thompson & Bowie and any fact witnesses. Planalto Supplement at 7-8. I agree that Ohio Casualty cannot establish that it has a substantial need for any such material when the only issue in the present action is the reasonableness of the damages award in the underlying action.

### III. Documents Associated with Employee-Experts

Ohio Casualty seeks documents withheld by Planalto under the attorney-client privilege; specifically, communications between Planalto's counsel and its employees who provided expert testimony on behalf of Planalto in the underlying action and who have also been identified as potential testifying experts in the instant action. Planalto asserts that there are three such "classic hybrid fact/expert witnesses" at issue.[3] Ohio Casualty asserts that the disclosure of any otherwise privileged document to an employee expert witness waives the privilege. Planalto replies that, while this may be the case with a retained expert, when the expert is also an employee, the result must be different.

---

[3] The employees are José Flávio Neves Mohallem, president or vice president of Planalto at the relevant time; José Eduardo Carneiro Santos, a veterinarian with managerial responsibilities; and Carlos Henrique Carneiro Santos, a veterinarian and manager of the microbiology laboratory. Planalto's Memorandum on Discovery Issues (submitted by e-mail on January 5, 2009) at 7-8.

8

Stating the issue as "whether a party must produce information protected by the attorney work product doctrine or the attorney-client privilege that was provided to any employee witness designated under Fed. R. Civ. P. 26(a)(2)(A)[,]" the United States Bankruptcy Court for the District of Maryland held, in an opinion that I find to be well-reasoned, that "the court will not require the production of materials protected by the attorney work product doctrine or attorney-client privilege which they considered." *In re USGen New England, Inc.*, 2007 WL 2363353 (Bkrtcy. D.Md. Aug. 16, 2007), at *10- 12.  On the other hand, if the employee expert has been "fed facts or opinions to support his . . . opinion testimony," *id*. at *12, the court held, the privilege will not protect the materials, as would be the case with a retained expert.  I have not seen any suggestion from Ohio Casualty that the latter instance applies here, but counsel for Planalto is under a professional obligation to make this distinction should the facts support it.

Ohio Casualty relies on *OCI Wyoming, L.P. v. PacifiCorp*, 2005 WL 5985388 (D.Wyo. Feb. 25, 2005), at *2, where the court held that any otherwise privileged document that an employee expert might have considered while formulating his or her opinion must be provided in discovery.  I do not find the *OCI* court's brief recital of the reasoning supporting this conclusion to be persuasive.  The other case law cited by Ohio Casualty concerned retained experts, not employee experts, for whom the standard is admittedly different.

Having adopted the *USGen* standard, I deny Ohio Casualty's request that I prohibit Planalto from instructing its employee experts not to answer any question that may be posed to them at deposition on the basis of attorney-client privilege.  First, there may be questions that implicate the privilege regardless of whether the employee expert considered or consulted any particular document in the course of reaching his opinion. Therefore, the request as presented is too broadly drawn, even before the *USGen* standard is applied.  Further, as noted, the *USGen*

9

standard, which I adopt, would allow such an instruction under the specific circumstances previously discussed.

### IV.  Conclusion

For the foregoing reasons, the request of the defendant, Ohio Casualty for an order compelling the plaintiff to turn over all documents, except attorney-client privileged material, provided to the plaintiff by the law firm Thompson & Bowie as its file concerning its representation of a party or parties to the underlying action, and for which Planalto has claimed the protection of the work product doctrine, is **DENIED**.  In addition, Ohio Casualty's requests for (1) discovery of all communications or documents related to Planalto's employees who have testified in the underlying action or may testify in this action for which Planalto has claimed the attorney-client privilege and (2) an order prohibiting Planalto from directing these employee experts not to answer any questions at deposition about documents or matters for which the attorney-client privilege is claimed are likewise **DENIED.**

Dated this 26th day of February, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge